# United States Court of Appeals for the Federal Circuit

06-3050

ROBERT H. LARY, JR.,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Paul F. Prentiss, Timmermier, Gross & Prentiss, of Omaha, Nebraska, argued for petitioner.

Ray E. Donahue, Attorney, Law Department Civil Practice, United States Postal Service, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, Civil Division, United States Department of Justice, of Washington, DC, and Lori J. Dym, Chief Counsel, Law Department Civil Practice, United States Postal Service, of Washington, DC. Of counsel were David M. Cohen, Director, James D. Colt and Kathryn A. Bleecker, Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

06-3050

ROBERT H. LARY, JR.,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED: December 21, 2006
_____

Before NEWMAN, DYK, and PROST, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Robert H. Lary, Jr. ("Lary") seeks review of the decision of the Merit Systems Protection Board ("Board") in DE0752020233-C-1, denying his petition for enforcement of a prior settlement agreement with the United States Postal Service ("the USPS"). Because we hold that the USPS breached the settlement agreement by not providing needed documents in a timely fashion and that the breach was material, we vacate the Board's decision and remand for entry of a decree of specific performance and an order of back pay and other relief consistent with this opinion.

BACKGROUND

Lary, a longtime employee of the USPS, suffers from Obstructive Sleep Apnea, a disorder that affects his breathing and thereby disrupts his sleep, often causing excessive drowsiness. As a consequence of this disorder, Lary was frequently late for his job as a Tour 2 Window Technician at the Benson United States Postal Station in Omaha, Nebraska.

On February 6, 2002, the USPS issued Lary a Notice of Proposed Removal charging him with "Unacceptable Conduct—Failure to Maintain a Regular Work Schedule/Tardy". On March 4, 2002, Lary was removed from his position effective March 8, 2002. Pursuant to 5 U.S.C. § 8337(b), Lary had until one year after his effective termination date, or March 8, 2003, to file a disability retirement application with the Office of Personnel Management ("OPM").

On or about April 5, 2002, Lary appealed his removal to the Board, charging the USPS with violating the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2000), and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (2000). On July 12, 2002, the parties entered into a "Stipulation and Settlement Agreement," pursuant to which Lary agreed to withdraw with prejudice his appeal and all other claims filed, never to seek or accept reinstatement to the USPS, and to accept a non-disciplinary removal for medical inability to perform his job duties due to sleep apnea.

The USPS made a number of return promises in the agreement. It agreed to vacate the March 4, 2002, Decision Letter removing Lary and the earlier Notice of Proposed Removal, and it agreed that those documents would be "removed &

expunged from [Lary]'s Official Personnel Folder and all other official files of the Agency." Resp't App. 26. The USPS also agreed to "issue a new PS Form 50 that will indicate medical inability to perform as the reason for [Lary]'s removal." Id. Crucially, the USPS agreed to provide Lary three documents "in connection with [Lary]'s application for disability retirement within two weeks" of the execution of the settlement. Id. at 27 (emphasis added). Those documents were the Supervisor's Statement, the Agency Certification of Reassignment and Accommodation Efforts and the Disability Retirement Checklist. Under the disability retirement regulations, these three documents are required "in order to determine whether the individual meets the eligibility requirements set forth in [5 C.F.R.] § 844.103." 5 C.F.R. § 844.203(a) (2006); see also OPM Standard Form 3112, "Documentation in Support of Disability Retirement Application" (1995), available at http://www.opm.gov/forms/html/sf.asp (requiring the forms as part of the disability retirement application process).

The USPS thus agreed to provide Lary, in the documents, with the statements necessary for Lary to meet the eligibility requirements of 5 C.F.R. § 844.103, including that the applicant was being removed for medical reasons; that accommodation efforts had been futile; that Lary's performance was deficient; and that the deficiency in Lary's performance was expected to continue indefinitely. See 5 C.F.R. § 844.103. The parties agreed to cooperate and communicate in good faith to implement the terms of the settlement. Pursuant to 5 C.F.R. § 1201.41(c)(2)(i) (2006), the Board accepted the settlement agreement into the appellate record and retained jurisdiction to enforce the terms of the agreement.

The USPS, as called for in the settlement agreement, issued a new PS Form 50 indicating medical inability to perform as the reason for removal. However, it is undisputed that the USPS did not provide the three documents in connection with Lary's disability retirement application within two weeks of the settlement agreement, as provided for by the agreement. In fact, the agency did not provide the three documents, completely and correctly filled out, until May 13, 2003, well after the March 8, 2003, deadline for Lary's disability retirement application, and after Lary's counsel had contacted the USPS several times to request the documents.

Ultimately the USPS itself filed Lary's disability retirement application with OPM, but this was not until May 13, 2003. On August 26, 2003, OPM rejected the application by letter because it was filed more than one year from Lary's separation on March 8, 2002. Lary did not seek review of OPM's decision. However, on July 16, 2003, Lary filed a petition for enforcement with the Board, alleging that the USPS had breached its obligations under the settlement agreement.

The Administrative Judge ("AJ") rejected all of Lary's claims. The AJ held that the USPS's failure to provide the needed documents in a timely fashion was not material because Lary was ultimately responsible for prosecuting his retirement application and, under OPM regulations, he could have filed an incomplete application with OPM before expiration of the one-year deadline and that application would still have been timely. The AJ also rejected Lary's claim that the USPS violated the terms of the settlement agreement when, in the new PS Form 50, the USPS referenced the first Board decision, which, in turn, had made reference to Lary's being removed for

attendance-related reasons. The AJ reasoned that the settlement agreement did not contain language precluding the USPS from referencing the first Board action.

Lary appealed the AJ's decision to the full Board, and an equally divided Board affirmed. Board member Sapin dissented, urging that the USPS had materially breached the agreement because it had prevented Lary from timely applying for disability retirement benefits, which was the "essential purpose" of the settlement agreement. Pet'r App. at 28. Addressing the question whether Lary unreasonably delayed in filing his application, Board member Sapin reasoned that the agency did nothing to inform Lary that he alone was responsible for making the one-year deadline and that Lary reasonably believed that the agency would file his application for him. Lary timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2000).

DISCUSSION

The Board's decision must be affirmed unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Yates v. Merit Sys. Prot. Bd., 145 F.3d 1480, 1483 (Fed. Cir. 1998). "A settlement agreement is a contract, and its construction is a question of law which this court reviews de novo." Conant v. Office of Pers. Mgmt., 255 F.3d 1371, 1376 (Fed. Cir. 2001). The question whether a breach of a contract is material is a mixed question of law and fact. Gilbert v. Dep't of Justice, 334 F.3d 1065, 1071 (Fed. Cir. 2003). At the same time, "[w]here, as here, the facts are undisputed,

the determination of whether there has been material non-compliance with the terms of a contract . . . necessarily reduces to a question of law." Id. at 1072.

I

We first consider whether there was a material breach of the settlement agreement. That there was a breach is clear, and the government itself does not dispute this fact. The government failed to provide the three documents referenced in the agreement within the specified two-week timeframe. Thus the question becomes whether the breach was material.

In determining materiality courts often look to whether the breached obligation is an important part of the contract. See Thomas v. Dep't of Hous. and Urban Dev., 124 F.3d 1439, 1442 (Fed. Cir. 1997) ("A breach is material when it relates to a matter of vital importance, or goes to the essence of the contract.") (citing 5 Arthur L. Corbin, Corbin on Contracts § 1104 (1964)). Here the government's failure to timely provide the three documents was central to the settlement agreement. The agreement expressly stated that the USPS would complete the required documents "in connection with [Lary]'s application for disability retirement." Resp't App. at 27. The documents were the very same ones that OPM required the USPS to complete before Lary's application could be considered complete. See OPM Standard Form 3112, "Documentation in Support of Disability Retirement Application" (1995), available at http://www.opm.gov/forms/html/sf.asp (listing the forms as required). Under these circumstances it is clear that the government breached an important obligation.

In determining whether a breach is material, we have also considered the Restatement factors:

In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts, § 241 (1981); see also Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1311-1312 (Fed. Cir. 2004). Here Lary has been deprived of the opportunity to timely file for disability retirement benefits, which he could reasonably expect from the settlement agreement. Since the Board does not have authority to grant damages, the second factor is also not met. See Wonderly v. Dep't of the Navy, 68 M.S.P.R. 529, 532 (1995). There is no risk that the government will suffer forfeiture, and the government is not likely to take steps to cure its failure. Finally, under the fifth factor, the government offers no justification for failing to perform in a timely way.

The AJ nonetheless held, and the government argues on appeal, that the breach was not material because, under OPM regulations, Lary could have filed an incomplete application and avoided missing the deadline. See 5 C.F.R. § 844.201(a)(3) ("An application . . . that is filed . . . within 1 year after the employee's separation, and that is incompletely executed . . . is deemed timely filed."); see also OPM Standard Form 3112 ("OPM must receive your application not more than one year after the date you

separated from your position.  If you are unable to get all the information requested, do not delay submitting your Standard Form 3112A to OPM.").

We reject this conclusion for two reasons.  First, the argument that Lary could have timely filed an incomplete application is relevant only to the question whether he could have mitigated damages and not to the materiality of the breach.  Even the detailed Restatement factors on materiality nowhere suggest that the nonbreaching party's failure to take steps that could mitigate damages is relevant to determining whether the breach was material.  The government has cited no authority suggesting that the failure to take mitigation steps bears on the materiality of the breach.  As the government did not make a mitigation argument below, and does not make one on appeal, we hold that the AJ erred in considering this ground.

The second reason we reject the government's argument is that, even if Lary had filed an incomplete application and thus avoided missing the one-year deadline, he would still have been irreparably harmed by the government's breach.  This is because disability benefits do not begin to accrue until all application requirements have been met and the application is complete.  OPM Standard Form 3112-2, at 7 ("Disability annuity benefits begin accruing on the first day after your pay as an employee stops and disability and service requirements have been met.") (emphasis added); see also OPM Standard Form 3112 (describing the documents that the USPS agreed to provide in the settlement as required). Thus the government's delay here cost Lary retirement benefits which he had no way of recouping.  The breach was clearly material.[1]

---

[1]     Lary also argues that the USPS materially breached the contract by referencing the first Board action in the new PS Form 50 that it issued pursuant to the settlement agreement.  Here the AJ found that the USPS did not violate its obligations

II

We now consider which remedy is appropriate here. The government admits that the MSPB can order rescission of the agreement and reinstatement of petitioner's claim on appeal or enforce the agreement. See Wonderly, 68 M.S.P.R. at 532 (1995).

"In a rescission, the parties are restored to their respective positions prior to the transaction." Blanco v. United States, 602 F.2d 324, 327 (Ct. Cl. 1979). Here rescission is not an adequate remedy. Rescinding the settlement agreement and reinstating Lary's appeal would not change the fact that Lary has missed the OPM deadline, since he had only one year from his separation date of March 8, 2002, to file his application with OPM.

The second remedy that the government agrees is available in this case is enforcement of the agreement. Enforcement by specific performance is intended to have "the same effect that the performance due under a contract would have produced." Restatement Second of Contracts § 357 cmt. a; see also id. at § 358(1) ("An order of specific performance . . . will be so drawn as best to effectuate the purposes for which the contract was made."). We hold that the appropriate remedy in this case is specific performance. An order of specific performance does not have to order the exact performance contemplated by the contract. The order "will be so drawn as best to effectuate the purposes for which the contract was made and on such terms as justice requires. It need not be absolute in form and the performance that it requires need not

---

under the settlement agreement because the agreement "did not contain language precluding the agency from referencing the Board as the authority for the removal for medical-inability-to-perform reasons." Resp't App. 19. In light of our holding that the USPS committed a material breach by withholding the documents, we need not address Lary's alternate argument on breach, as it would not affect the result.

be identical with that due under the contract." Id. § 358(1); McFarland v. Gregory, 322 F.2d 737, 739 (2d Cir. 1963) ("In framing such a decree the performance that it requires need not be identical with that promised in the contract."). Rather, [t]he court should so mold its decree as best to effectuate the purposes for which the contract was made." 12 Margaret N. Kniffin, Corbin on Contracts § 1137 (Joseph M. Perillo ed., rev. ed. 1993); see also Restatement (Second) of Contracts § 358 cmt. a (describing the goal of "assur[ing] the expectations of the parties").

Here, it is simply impossible to order that the documents be timely provided. Rather, in order to effectuate the purpose of the settlement agreement, which was to give Lary the opportunity to timely file for disability retirement with the full support of the USPS, the MPSB should order the USPS to take again all steps contemplated by the original agreement. Thus the MSPB should order the USPS to vacate any and all of Lary's prior removals, proposed removal letters and PS Form 50's and expunge them from the records, and to issue a new letter of decision removing Lary (effective on the date the new letter issues) and a new PS Form 50 indicating medical inability to perform as the reason for removal. It should further order the USPS to provide the three documents (the Supervisor's Statement, the Agency Certification of Reassignment and Accommodation Efforts and the Disability Retirement Checklist) within two weeks of the order of specific performance. These newly-issued documents should reference only the date of the removal entered pursuant to the order of specific performance, and not any earlier removals. Under OPM policy, Lary will then be able to file for disability retirement benefits within one year of the new removal entered pursuant to the decree of specific performance.

Since Lary's previous removals will be expunged, the agency on remand should also award Lary any back pay and other relief that he may be due under 5 U.S.C. § 5596 (2001). See also 5 C.F.R §§ 550.801 et seq. (2006). In order to avoid a windfall to Lary, any back pay should not exceed the amount of disability payments that Lary would have received in the relevant time period if the USPS had complied with the settlement agreement.[2] See Old Stone Corp. v. United States, 450 F.3d 1360, 1378 (Fed. Cir. 2006) ("[T]he non-breaching party should not be placed in a better position through the award of damages than if there had been no breach.") (internal citations and quotation marks omitted).[3]

## CONCLUSION

For the foregoing reasons, we vacate and remand to the Board for the entry of a decree of specific performance and an order of back pay and other relief consistent with this opinion.

## VACATED AND REMANDED

## COSTS

No costs.

---

[2]    Of course, in the event that OPM determines, on the merits, that Lary is not entitled to disability retirement payments, Lary shall not be entitled to back pay.

[3]    The government alternatively contends that we should deny relief because Lary's petition for enforcement was untimely, on the theory that Lary did not file within a reasonable time because he did not file promptly after the settlement agreement's two-week deadline for providing the documents had elapsed. We see no basis for holding that his petition was untimely.