NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AMY TERRELL PAYTON,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2025-1231

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-16-0592-B-1.

---

Decided: June 9, 2025

---

AMY PAYTON, Gulfport, MS, pro se.

DANIEL BERTONI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before TARANTO, HUGHES, and STARK, *Circuit Judges.*

PER CURIAM.

Amy Terrell Payton worked as a Nursing Assistant with the Department of Veterans Affairs (VA). In 2013, VA removed Ms. Payton from her position (for the first time), and she appealed to the Merit Systems Protection Board. In 2023, she entered a settlement agreement with VA under which VA would pay her a lump sum and she would waive any pending or future claims. Government Supplemental Appendix (S. Appx.) at 42–45. Subsequently, she asked the Board to revoke the settlement agreement. A Board-assigned administrative judge denied the request and dismissed Ms. Payton's appeal as settled, determining that the settlement agreement was enforceable and addressed all issues in her appeal. S. Appx. 9–10. Ms. Payton sought full Board review, but the full Board affirmed the administrative judge's decision, which became the final decision of the Board. S. Appx. 1–3. We now affirm.

I

Ms. Payton worked as a Nursing Assistant for VA in Biloxi, Mississippi. S. Appx. 9; S. Appx. 42. In 2013, VA removed Ms. Payton from her position. S. Appx. 26. Over the next ten years, Ms. Payton challenged that removal, including by filing an Individual Right of Action (IRA) appeal to the Board in 2016. S. Appx. 20; S. Appx. 26–30; 5 U.S.C. §§ 1214(a)(3), 1221.

In September 2023, Ms. Payton (through counsel) and VA engaged in mediation, S. Appx. 40–41, which led to a settlement, S. Appx. 42–45. According to the agreement, Ms. Payton would withdraw her pending claims, complaints, and appeals against VA, and waive future ones based on pre-agreement events, in exchange for (1) payment of $35,000 "[w]ithin 30 days of the date this agreement becomes binding and fully effective, or within 30 days of obtaining a completed vendorization form" that provided her banking information and (2) modification of her personnel file to indicate that she had resigned for personal reasons. S. Appx. 42–43. The agreement recounted

Ms. Payton's rights under the Older Workers Benefit Protection Act and provided that, "[s]olely as to any claim of discrimination based on age, 40 years or older," she "ha[d] seven (7) days from the date that all Parties" signed the agreement to revoke it.  S. Appx. 44–45.  The agreement also provided the Board with the power to enforce the agreement.  S. Appx. 43.

On October 17, 2023, Ms. Payton's counsel emailed VA to indicate Ms. Payton's intention to revoke the settlement agreement "[a]s the settlement ha[d] not been fully executed by the Agency as of the sending of [the] email" because all parties had not yet signed the agreement.  S. Appx. 47.  VA responded and attached the settlement agreement, which showed that VA had signed the agreement on October 16, 2023.  S. Appx. 47 (discussing agreement with signature at S. Appx. 45).  As Ms. Payton and her attorney had signed the agreement on October 3 and 5, 2023, respectively, the agreement had gone into effect on October 16, which Ms. Payton's counsel acknowledged in an email response to VA.  S. Appx. 45; S. Appx. 46.

On October 21, 2023, Ms. Payton terminated her representation by her attorney, S. Appx. 50, and emailed VA directly, stating that she "wish[ed] to revoke this settlement agreement due to age discrimination" and that she "believe[d]" that VA "want[ed her] to agree to these terms because [she was] almost 50."  S. Appx. 51.  On the same day, she filed a request to the Board to revoke the entire settlement agreement, citing alleged age discrimination.  S. Appx. 54–55.  On October 23, 2023, VA counsel responded to Ms. Payton's October 21 email, acknowledging that she had revoked the agreement as to the age discrimination claims and stating that she could "pursue any age discrimination claim [she] ha[d] without any waiver applying" to such claims.  S. Appx. 51.  VA counsel requested information from Ms. Payton so that VA could pay her what was agreed to "[a]s it relate[d] to the remainder of the waive[d]" claims.  S. Appx. 51.  Without providing the

requested information, Ms. Payton responded that she "want[ed] to revoke the contract agreement" and pursue pleadings before the Board. S. Appx. 52. Ms. Payton also informed VA counsel that she had filed an equal employment opportunity (EEO) complaint alleging age discrimination. S. Appx. 52; S. Appx. 56 (VA letter acknowledging her EEO complaint filed October 23, 2023).

VA counsel emailed Ms. Payton on November 6, 2023, requesting that she provide information to process her payment by completing a vendorization form (providing bank-account information for VA's payment). S. Appx. 52. On November 15, 2023, Ms. Payton emailed VA counsel the completed form, which VA counsel acknowledged on the same day. S. Appx. 53. On November 27, 2023, Ms. Payton filed a request with the Board to "[d]ismiss [her October 21] request to revoke [the] settlement agreement," S. Appx. 57, despite not yet receiving payment from VA, *see* S. Appx. 62; S. Appx. 1 n.2. On December 14, 2023, VA emailed Ms. Payton requesting information necessary to pay her, and Ms. Payton complied. S. Appx. 58–61.

On December 29, 2023, Ms. Payton submitted to the Board a "second request to revoke th[e] settlement agreement." S. Appx. 62–63. She stated that she had previously sought a dismissal to her initial revocation request because she faced technical difficulties in submitting her pleadings and "was in distress to obtain the settlement money to pay for attorney fees." S. Appx. 62. She argued that (1) VA's failure to deposit the settlement payment within thirty days of November 15, 2023, when she provided VA with the requested information, was "a breach of contract," (2) she had not understood the settlement agreement because her counsel had not reviewed it with her, and (3) she could still revoke the settlement agreement because she had requested revocation within seven days of the final signature. S. Appx. 62–63.

On January 3, 2024, a Board-assigned administrative judge dismissed Ms. Payton's 2016 IRA appeal as settled. S. Appx. 9–10. The administrative judge found that Ms. Payton "understands the terms and has entered into the agreement voluntarily" and held that the agreement was "lawful on its face." S. Appx. 9. Thus, the administrative judge determined that the agreement, which had been signed by all parties, was enforceable and entered it into the record. S. Appx. 9–10. Noting that Ms. Payton's allegation of age discrimination was not an issue in the 2016 IRA appeal, the administrative judge held that no matter remained for adjudication "[b]ecause the agreement [was] a full and complete settlement of all the issues [Ms. Payton] raised in this appeal." S. Appx. 9 n.1, 10.

Ms. Payton filed a petition for full Board review of the initial decision. S. Appx. 24; S. Appx. 64. She repeated her arguments, expressed "strong[] regret" about her decision to send VA her payment information, and stated that her banking information had changed. S. Appx. 64. On October 15, 2024, the Board denied the petition and affirmed the administrative judge's decision, which became the final decision of the Board. S. Appx. 1–3. Because the "plain language of the agreement . . . . does not contain any provision permitting [Ms. Payton] to revoke the settlement agreement with respect to her other, non-age discrimination claims," the agreement "remains in effect despite her attempt to revoke it." S. Appx. 2–3. The Board also noted that Ms. Payton could file a petition for enforcement of the agreement to pursue her allegations that VA failed to comply with the agreement because it had not yet paid her. S. Appx. 1 n.2 (citing 5 C.F.R. § 1201.182(a)). Ms. Payton timely filed this appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(9). *See also* 5 U.S.C. § 7703(b)(1)(B).

## II

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The petitioner bears the burden of establishing error in the Board's decision." *Tiburzi v. Department of Justice*, 269 F.3d 1346, 1351 (Fed. Cir. 2001).

Ms. Payton argues that this court should "cancel the settlement agreement due to [VA]'s breach of contract"—the alleged nonpayment of the $35,000 lump sum within thirty days of receiving Ms. Payton's completed vendorization form. Payton Informal Brief at 2–4. The Board erred, Ms. Payton argues, because it did not determine whether VA had fulfilled its contractual obligations and make findings of fact necessary for that determination. *Id.* at 2, 4. We reject this argument, and we therefore affirm the Board's decision.[1]

First, to the extent that Ms. Payton presented to the Board an argument for breach of the settlement agreement with rescission as a remedy, we see no error in the Board's conclusion that the proper procedure for making such an argument is one Ms. Payton has not invoked, S. Appx. 1 n.2: a petition for enforcement of the settlement agreement under 5 C.F.R. § 1201.182. We have so recognized before, *see Torain v. Smithsonian Institution*, 465 F. App'x 945, 948 (Fed. Cir. 2012) (citing *Trotta v. U.S. Postal Service*, 73

---

[1]    Although Ms. Payton argued to the Board that she did not voluntarily enter the settlement agreement and has the power to revoke her acceptance, S. Appx. 62–63; S. Appx. 64, she has not raised those arguments in her opening brief to us, Payton Informal Brief at 1–4; *see also* Government Response Brief at 13–14. "[A]rguments not raised in the opening brief are forfeited." *McIntosh v. Department of Defense*, 53 F.4th 630, 641 (Fed. Cir. 2022) (internal quotation marks and citation omitted). Thus, we do not address either argument.

M.S.P.R. 6, 9 (1997)), and we do so again here. The fact-based analysis sought by Ms. Payton, which would be necessary to determine whether VA breached the contract and to assess the materiality of any breach, would be undertaken by the Board and its administrative judges in adjudicating a petition for enforcement. 5 C.F.R. § 1201.183(a); *see, e.g., Lary v. U.S. Postal Service*, 472 F.3d 1363, 1366–68 (Fed. Cir. 2006), *decision clarified on denial of reh'g*, 493 F.3d 1355 (Fed. Cir. 2007); *Poett v. Merit Systems Protection Board*, 360 F.3d 1377, 1380–85 (Fed. Cir. 2004). If a breach is found, the Board may award an appropriate remedy—which might be, *e.g.*, rescission and reinstatement of the original appeal or enforcement by specific performance (here, payment). 5 C.F.R. § 1201.183(a)(8); *see Lary*, 472 F.3d at 1368–69; *Cunningham v. United States*, 748 F.3d 1172, 1173, 1175 (Fed. Cir. 2014).

Second, if there ever could be an occasion for bypassing the petition-for-enforcement process because the merits of the argument for rescission based on breach are so compellingly clear, this is not such a case. Even if we assume (without deciding) that there was a breach, there is no entitlement to rescission of the settlement agreement where VA did not repudiate the contract in the absence of a fraud (or other grounds for invalidity like mutual mistake) or a "total breach" of the contract. *See Franconia Associates v. United States*, 536 U.S. 129, 142–43 (2002) (discussing repudiation); *Admiral Financial Corp. v. United States*, 378 F.3d 1336, 1344–45 (Fed. Cir. 2004) (discussing the remedy of rescission and explaining what constitutes a "total breach"); Restatement (Third) of Restitution and Unjust Enrichment § 37 cmt. a (Am. L. Inst. 2011) (explaining that rescission may be a remedy for a "material breach" and "when there has been performance under a contract that is subject to avoidance for fraud, mistake, or similar grounds of invalidity"). There is no apparent VA repudiation of the settlement agreement here. Nor is there a "showing of wrongful conduct" at the time of entering that agreement.

*Asberry v. U.S. Postal Service*, 692 F.2d 1378, 1380–81 (Fed. Cir. 1982) (citation omitted); *Tiburzi*, 269 F.3d at 1355 (citations omitted); *see also Callen v. Pennsylvania Railroad Co.*, 332 U.S. 625, 630 (1948). And, as VA "stands ready to pay," Government Response Brief at 12, the non-payment asserted here would be a mere late payment that is not a breach that "so substantially impairs the value of the contract to the injured party at the time of the breach that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance" (*i.e.*, a "total breach"). *See Admiral Financial Corp.*, 378 F.3d at 1344–45 (quoting *Mobile Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 608 (2000)).

## III

For the foregoing reasons, we affirm the Board's decision.

The parties shall bear their own costs.

**AFFIRMED**